# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

|  |  |
|---|---|
| MARGARET A. LAGUERRA,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>U.S. DEPARTMENT OF TREASURY,<br>INTERNAL REVENUE SERVICE and<br>U.S. EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION,<br><br>　　　Defendants. | Civil Action No. TDC-14-2701 |

## MEMORANDUM OPINION

Plaintiff Margaret A. Laguerra has filed suit against Defendants the United States Department of the Treasury ("Treasury"), the Internal Revenue Service ("IRS"), and the United States Equal Employment Opportunity Commission ("EEOC") (collectively, "Defendants"), alleging discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (2012), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (2012). Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. The Motion is fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND

The following facts are presented in the light most favorable to Laguerra, the nonmoving party:

## I.    Alleged Discrimination

Margaret Laguerra, who is 68 years old and African American, began working for the IRS in 1987.   In 1997, she was transferred to the Cincinnati, Ohio Benefits and Services Retirement Group ("BeST").   Although her supervisor and most of her BeST colleagues were based in Cincinnati, Laguerra and two others worked at an office in Landover, Maryland, known as the District of Columbia post-of-duty ("D.C. POD").   In 2003, Laguerra became a Human Resources Assistant with BeST.   In that position, Laguerra prepared retirement benefit estimates for federal employees.

In December 2005, Sandra Nahrgang, who had served as a Team Lead for Laguerra's previous supervisor since 2004, became Laguerra's supervisor.   Nahrgang and Laguerra became progressively dissatisfied with each other.   Nahrgang harbored concerns about the accuracy and efficiency of Laguerra's work, and those concerns grew with time.   For her part, Laguerra came to believe that Nahrgang wanted to drive her out of her job because of Laguerra's age.   Nahrgang is about two years older than Laguerra.   She never made any comments about Laguerra's age, but Laguerra perceived age-related hostility when Nahrgang denied her back-up coverage at the office, excluded her from office meetings, and behaved in a "standoffish" manner towards her. Mot. Summ. J. Ex. 7, 2010 Laguerra Dep. at 53-57.   Laguerra also contends that Nahrgang treated her differently than the other Human Resources Assistants at BeST, Lamour Ushery and Diann Love.   Ushery and Love were approximately 44 and 49 years old, respectively, as of 2005. Both worked in Cincinnati.

Nahrgang sometimes compared Laguerra's performance to that of Ushery and Love. Laguerra claims that this comparison was unfair since Ushery and Love had a lighter workload and better training opportunities.   Specifically, Laguerra asserts that she had more work than

2

Ushery and Love because she had administrative duties and they did not. The D.C. POD had no dedicated clerical staff. Laguerra's two co-workers in that office were both Benefits Specialists, who handled complicated retirement cases and were not assigned administrative tasks. As a result, mail sorting fell to Laguerra. That task involved date stamping the mail, logging it in BeST's tracking system, reviewing lengthy official personnel files to ensure that they were complete (even when they were not Laguerra's cases), and ordering missing information for those files when necessary. At some point, Laguerra complained to Nahrgang about these responsibilities. Nahrgang reduced them, but Laguerra claims that they continued to consume a large portion of her time. By contrast, Ushery and Love did not have to handle the mail because Lana Gabbard, who was also a Human Resources assistant with BeST but at a lower General Schedule grade than Laguerra, Ushery, and Love, processed mail for the Cincinnati office.

Although Laguerra had administrative duties that Ushery and Love did not, Laguerra handled fewer retirement cases than Ushery or Love. For instance, between June 1, 2010 and December 10, 2010, Laguerra was assigned 53 cases. Ushery and Love were assigned approximately 300 cases each. From January 1, 2011 to mid-March 2011, Laguerra was assigned 38 cases, while Love was assigned 359. Nevertheless, Laguerra claims she shouldered a "double workload" because she had the dual responsibilities of case work and mail sorting. 2010 Laguerra Dep. at 53.

Laguerra also claims that Ushery and Love benefited from better training opportunities. Specifically, they were permitted to "shadow" Benefits Specialists. Pl.'s Mem. Resp. Mot. Dismiss ("Resp.") Ex. 14, Laguerra Training Decl. at 7-8. By observing their more experienced colleagues, Ushery and Love could improve their job skills without committing errors that would be recorded in their personnel files. Laguerra was never allowed to shadow a Benefits Specialist.

3

Instead, Laguerra's work was "100 percent quality reviewed," which meant that BeST Team Leads Loretta Dean and Clarence Lehigh reviewed every assignment she completed and provided her with written feedback about her mistakes. Although Nahrgang, Dean, and Lehigh contend that this quality review system was necessary given the persistent errors in Laguerra's work, Laguerra protests that all of her errors were logged in her personnel file, while the shadowing by Ushery and Love did not generate a paper trail of their mistakes. Laguerra also notes that Team Leads "provide mentorship and training" to the Human Resources Assistants in Cincinnati, but since "there is no one in a managerial capacity at the Washington, D.C. office" Laguerra has "not had the benefit of such managerial mentorship and training." *Id.* at 8. Laguerra perceives age discrimination in these disparate training opportunities. She asserts, "Management does not believe it will recoup the money it spends to train me because of my age and thus it does not offer me any training sessions." *Id.*

Laguerra did receive training during her tenure with BeST. She attended formal sessions in 1999, 2003, 2005, and 2007. Laguerra also submitted documentation of 25 training sessions she completed between 1998 at 2006. Nahrgang contends that Laguerra's formal training equals or exceeds that received by other Human Resources Assistants. Laguerra also had one-on-one training sessions with Nahrgang and Team Leads on several occasions in Landover and Cincinnati. She regularly asked Nahrgang, Team Leads, and Benefits Specialists questions about her assignments. The quality review process also generated a steady flow of feedback on her work over the course of several years. Laguerra disputes that this training offered a meaningful opportunity for her to improve her performance, arguing that the formal sessions were too advanced or irrelevant and the quality review feedback was unhelpful.

## II.    2008 EEO Complaint

From 2001 until 2007, Laguerra received annual performance reviews that generally rated her work at approximately 3.0 points on a 5.0-point scale, considered "fully successful." On June 30, 2008, Nahrgang issued a performance review that dropped Laguerra's rating from 3.2 to 1.6, considered "unacceptable."   Of the 229 cases assigned to Laguerra during the evaluation period, she completed only 22.   Of the 22 completed, Laguerra finished only nine within internal deadlines.   Laguerra's unfinished work had to be reapportioned among other BeST employees.   Over that same period, Ushery and Love completed 492 and 206 cases, respectively.   Customers complained that Laguerra did not return their calls or emails.   Laguerra continued to make the same types of mistakes even after they were pointed out to her.   Laguerra claims that she received no advanced notice of the negative performance review.   She also counters that one of the reasons her work was late was because she often did not receive case files until after the internal deadline for processing them had already passed.

On July 16, 2008, Laguerra went out on extended sick leave.   For several pay periods in 2008 and 2009, Laguerra's leave status was classified—incorrectly, according to her—as either absent without leave or leave without pay.   Laguerra also claims that she did not accrue the sick and annual leave to which she was entitled during this period.   Nahrgang counters that Laguerra was put on absent without leave status because she had not provided adequate medical documentation.   Then, Laguerra was put on leave without pay because she had exhausted her accumulated and donated leave.

On November 14, 2008, while out on sick leave, Laguerra filed an Equal Employment Opportunity ("EEO") complaint with Treasury.   Laguerra returned to work on February 3, 2009, when she discovered that a color printer had been removed from her cubicle.   Because other

printers were not working, it had been moved to a location where the Benefits Specialists could access it.

When Laguerra came back from sick leave, she asked for and received 90 days to retrain. She did not handle live cases during this period. After 90 days, she was assigned one new case per day, a case assignment rate lower than that of other Human Resources Assistants. On July 1, 2009, Nahrgang issued another annual appraisal rating Laguerra's performance as unacceptable.

On July 9, 2009, she amended the November 2008 EEO complaint after receiving her performance rating. The amended complaint alleged that she had been subjected to a hostile work environment on the basis of race, color, age, and retaliation for prior EEO activity. She cited the 2008 performance review, training and workload disparities between her and her co-workers, and Nahrgang's denial of back-up office coverage as evidence of the hostile work environment. She also claimed she was retaliated against through the improper calculation and classification of her sick leave, the removal of the printer, and her 2009 performance rating.

The IRS conducted an investigation and, on August 11, 2011, an EEOC Administrative Judge ("AJ") granted the IRS's motion for summary judgment. The IRS issued a final order adopting the AJ's decision. On May 28, 2014, the EEOC's Office of Federal Operations affirmed the agency's decision. The Office of Federal Operations found that Laguerra failed to show that IRS management took the actions about which she complained for discriminatory or retaliatory reasons.

## III.    2010 EEO Complaint

Laguerra claims that while her 2008 EEO complaint was pending, she was subjected to additional retaliation. In her annual appraisal in June 2010, Nahrgang again rated Laguerra's performance as unacceptable. During the relevant evaluation period, Laguerra was assigned 127

cases. Of the 92 she completed, 53 contained errors, and 90 percent were not finished on time. On October 31, 2010, Laguerra filed another EEO complaint with Treasury.

In February 2011, Laguerra's request to attend a training session on the Federal Erroneous Retirement Coverage Corrections Act ("FERCCA") was denied. A Benefits Specialist from the D.C. POD attended that training. Nahrgang contends that the training was irrelevant to Laguerra's job duties since FERCCA cases are handled by Benefits Specialists, not Human Resources Assistants. In March 2011, Nahrgang removed Laguerra from her Alternative Work Schedule. IRS policy prohibits employees whose work has been rated unacceptable to work such schedules.

On March 8, 2011, Laguerra had a call with Nahrgang about Laguerra's performance. Days later, she learned that others had been listening to the call but had not been announced. Laguerra felt that her privacy had been violated. Also in March 2011, Nahrgang increased the rate at which Laguerra was assigned cases from one per day to two per day. Nahrgang asserts that a rising caseload for all of BeST necessitated the increase. Even with the increase, Laguerra was still being assigned fewer cases than other Human Resources Assistants, whom Nahrgang expected to complete three to five cases per day.

On April 5, 2011, Laguerra amended the October 2010 EEO Complaint. The amended complaint alleged that Laguerra was subjected to a hostile work environment on the basis of age and as retaliation for prior EEO activity. She cited her 2010 performance review, the denial of FERCCA training, her removal from the Alternative Work Schedule, her telephone call with unannounced participants, and her increased workload. On October 15, 2014, an EEOC AJ dismissed the complaint as duplicative of this lawsuit, which Laguerra filed on August 21, 2014.

On December 11, 2014, the IRS affirmed the dismissal, and, on March 19, 2015, the EEOC Office of Federal Operations did the same.

## IV.    Performance Improvement Plan and Retirement

Following the 2010 performance review, Nahrgang did not perceive an improvement in Laguerra's work.  Between June 1, 2010 and May 16, 2011, Laguerra completed just 41 cases, with 26 having been prepared incorrectly.  Laguerra responds that she actually completed 48 cases, 28 of which contained minor errors.  She claims that she closed additional cases but did not receive credit for that work.  On May 16, 2011, Nahrgang placed Laguerra on a Performance Improvement Plan ("PIP"), giving her 60 days "to demonstrate at least minimally successful performance" or face termination.   Mot. Summ. J. Ex. 3, 2010 EEO Compl. Report of Investigation at 417.  Over the course of the next month, BeST team members provided Laguerra with 12 refresher training sessions, each about one hour in length.  Laguerra contends that the sessions were too short to be helpful.  In July of 2011, Nahrgang retired.  On July 29, 2011, Laguerra received a fourth consecutive annual performance appraisal rating her work as unacceptable (1.4 points out of 5.0).  The appraisal stated that Laguerra was assigned 232 cases during the appraisal period, 70 of which had to be reassigned because they were still pending one to three months after internal deadlines had passed.  Of the 60 cases Laguerra completed, 42 contained errors.  On October 31, 2011, Laguerra filed an EEO complaint with the IRS alleging that her 2011 performance review created a hostile work environment and was issued in reprisal for past EEO activity.

On February 13, 2012, Michelle Hamilton, Associate Director of Benefits and Workforce Restructuring Services, and Paul Needham, Chief of the Benefits and Services Division, informed Laguerra that her performance had not sufficiently improved and that if she did not

retire, she would be terminated. They gave her two days to decide. On February 15, 2012, she chose to retire, effective February 28, 2012. On February 28, Laguerra sent an email stating that she had changed her mind and did not want to retire. The following day, on February 29, Needham sent to Laguerra a Notice of Proposed Action, stating, with specific examples, that Laguerra was to be terminated for incomplete, inaccurate, and untimely work and an inability to work with minimal supervision. Later that day, Laguerra changed her mind once more and sent an email tendering her resignation, effective immediately.

## V.    Post-Retirement Appeal and Complaint

The IRS informed Laguerra that, if she believed she had been forced into retirement, she could appeal that action to the Merit Systems Protection Board ("MSPB"). If she also wished to allege discrimination, she could file that claim with the MSPB or with the IRS discrimination complaint system.   Laguerra did both.   On March 15, 2012, she appealed her allegedly involuntary retirement to the MSPB.   On April 18, 2012, she added a retirement-related discrimination claim to the EEO complaint she had filed on October 31, 2011. Treasury held the complaint in abeyance while the first-filed MSPB appeal was pending.

The AJ for Laguerra's MSPB appeal questioned whether the MSPB had jurisdiction. The AJ observed that when a federal agency presents an employee with the ultimatum of retirement or termination and the employee chooses to retire, the MSPB has jurisdiction to review that decision only if the employee can show that the retirement was involuntary, which can be established by a showing that the agency had no reasonable grounds for threatening termination. The AJ gave Laguerra an opportunity to present evidence that her retirement was involuntary. After reviewing that evidence, the AJ concluded that Laguerra had not met her burden to prove that her retirement was involuntary under the standards applied by the MSPB, so he dismissed

the case for lack of jurisdiction. Laguerra appealed the decision to the MSPB, which on June 13, 2012 affirmed the AJ's decision. The MSPB's order informed Laguerra that she could appeal the decision to the United States Court of Appeals for the Federal Circuit. The order made no mention of appeal to a United States District Court. Laguerra then appealed the MSPB's order to the Federal Circuit. On January 13, 2014, the Federal Circuit affirmed the MSPB's dismissal for lack of jurisdiction. *Laguerra v. Merit Sys. Prot. Bd.*, 551 F. App'x 1007, 1010 (Fed. Cir. 2014).

After the Federal Circuit ruled, the IRS resumed processing Laguerra's pending complaint. On May 19, 2014, the IRS issued an order rejecting Laguerra's allegations of discrimination and retaliation related to her 2010 performance evaluation and retirement.

## VI.   Procedural History

On August 21, 2014, Laguerra filed her Complaint in this case. After Laguerra's Motion for Leave to Amend the Complaint was docketed as a Notice of Interlocutory Appeal, the case was stayed until the United States Court of Appeals for the Fourth Circuit remanded it to this Court with instructions to consider Laguerra's filing as a Motion for Leave to Amend the Complaint. On October 5, 2015, Laguerra filed a Corrected Amended Complaint. The Amended Complaint reiterates the allegations made in the three EEO complaints discussed above. It seeks an unspecified amount of damages, revision of Laguerra's performance reviews to reflect successful performance, removal of her performance records from the internet, and investigations into the IRS's Human Capital Office and its use of PIPs. On October 19, 2015, Laguerra filed a Motion to Supplement the Amended Complaint, which the Court now grants. Based on the Amended Complaint's references to the EEO complaints filed by Laguerra with Treasury in 2008, 2010, and 2011, the Court construes the Amended Complaint as alleging

claims of hostile work environment and retaliatory termination under the ADEA and Title VII, as well as discriminatory termination under the ADEA.

On November 23, 2015, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. On January 4, 2016, Laguerra filed a Response. On January 21, 2016, Defendants submitted a Reply. On February 10, 2016, Laguerra submitted a Motion for Leave to File Surreply, which the Court denies because it responds to arguments raised in Defendants' opening brief that Laguerra could have addressed in her Response. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003) (stating that a motion for surreply should be denied when it does not address "matters presented to the court for the first time in the opposing party's reply").

## DISCUSSION

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. They argue that Laguerra has waived any claim for constructive discharge, that she has not alleged damages recoverable under the ADEA, that she has not stated a plausible claim of hostile work environment, and that no reasonable juror could conclude that the IRS's explanation for forcing her into retirement was pretext for age discrimination or retaliation.

I.     **Legal Standards**

A.     **Motion to Dismiss**

Defendants' arguments regarding waiver, ADEA damages, and hostile work environment are properly considered as the subjects of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556

11

U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### B.    Motion for Summary Judgment

Both parties have attached numerous exhibits to their briefs relevant to Laguerra's claims of discriminatory and retaliatory discharge. The Court cannot consider these materials unless it converts the Motion to Dismiss into a Motion for Summary Judgment with respect to these claims. Fed. R. Civ. P. 12(d). In her Response, Laguerra argues that Defendants' summary judgment motion is premature because discovery has not yet occurred.

Although a party may move for summary judgment before the commencement of discovery, *see* Fed. R. Civ. P. 56(b), "summary judgment [must] be denied when the nonmovant 'has not had the opportunity to discover information that is essential to his opposition.'" *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2015) (quoting *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)). The proper procedure for seeking additional time for discovery is to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d) explaining why, "for specified reasons," the party needs discovery to oppose a summary judgment motion. Fed. R. Civ. P. 56(d); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Although the nonmovant's failure to file a Rule 56(d) affidavit is a sufficient reason to decide a

pre-discovery motion for summary judgment, the Court may still consider a request for discovery presented in the nonmovant's memorandum of law opposing summary judgment. *See Harrods*, 302 F.3d at 244-45. A court may deny a Rule 56(d) motion or its equivalent "when the information sought would not by itself create a genuine issue of material fact" sufficient to preclude summary judgment. *Pisano*, 743 F.3d at 931.

Laguerra has not submitted a Rule 56(d) affidavit, but her Response to the Motion asserts that she needs discovery to uncover facts essential to her opposition. Significantly, however, the record before the Court is already voluminous and comprehensive, containing materials compiled through the IRS's investigations of three of Laguerra's EEO complaints as well as numerous exhibits submitted by Laguerra. Courts have properly proceeded to summary judgment without discovery under similar circumstances. *See Landino v. Sapp*, 520 F. App'x 195, 199 (4th Cir. 2013) (affirming district court's denial of a Title VII plaintiff's Rule 56(d) motion in part because the plaintiff did not identify necessary evidence not contained in the "robust" administrative record); *Boyd v. Gutierrez*, 214 F. App'x 322, 323 (4th Cir. 2007) (same).

Laguerra offers only one specific reason to forego ruling on the summary judgment motion. She seeks discovery regarding the IRS's alleged agency-wide pattern and practice of using PIPs to terminate older workers or force their retirement. Although evidence of an employer's pattern and practice of age discrimination can be relevant to an individual employee's discrimination claim to support an inference of discrimination or pretext, "statistics alone cannot establish a prima facie case of individual disparate treatment, for all four elements of a prima facie case must be established." *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760-61 (4th Cir. 1998), *rev'd on other grounds*, 527 U.S. 1031 (1999). Here, even if Laguerra

13

could somehow uncover evidence that the IRS has deployed PIPs as a tool of discrimination against older workers, there would still be no genuine issue of material fact regarding her age discrimination claim because of the overwhelming evidence, as detailed below, that Laguerra's supervisors instituted *her* PIP in response to acute and longstanding deficiencies in her work performance, and the lack of any direct evidence of age discrimination or retaliatory motivation.

Laguerra identifies no other specific reasons for discovery and otherwise makes only a general request for the need to uncover additional evidence. Such general requests are insufficient grounds to support a request under Rule 56(d). *See Mercer v. Arc of Prince George's Cty., Inc.*, 532 F. App'x 392, 400 (4th Cir. 2013) (affirming district court's grant of summary judgment before discovery where a plaintiff's memorandum opposing summary judgment did not state the specific reasons why she needed discovery). Thus, the Court finds that Laguerra has not shown that discovery is necessary to present facts essential to her opposition to the Motion. Consequently, the Court will construe Defendants' Motion as a Motion for Summary Judgment with respect to Laguerra's claims of discriminatory and retaliatory termination.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine

dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.   Waiver

Defendants first argue that when Laguerra appealed the MSPB's dismissal of her case to the Federal Circuit, she waived any claim for age discrimination or retaliation stemming from her forced retirement. This argument fails because the MSPB dismissed Laguerra's case for lack of jurisdiction, not on the merits. A review of the options available to Laguerra for challenging her retirement helps explain why.

A federal employee alleging discrimination or retaliation under the ADEA or Title VII may file an EEO complaint with the employing agency. 29 C.F.R. § 1614.103 (2015). Such an employee may appeal the final agency decision on that complaint to a United States District Court directly, or to the EEOC first and then to federal district court. 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.401(a), 1614.407; *Laber v. Harvey*, 438 F.3d 404, 416 & n.9 (4th Cir. 2006). If a federal employee has also challenged an employment action over which the MSPB has jurisdiction and alleges that such action was the result of discrimination, the employee may file a so-called "mixed case appeal" of the final agency decision with the MSPB. 5 U.S.C. § 7702(a)(1) (2012); 29 C.F.R. § 1614.302; *Conforto v. Merit Sys. Prot. Bd.*, 713 F.3d 1111, 1115 (Fed. Cir. 2013). If the MSPB rules against the employee on the merits of a mixed case, the employee may appeal the MSPB decision to either the Federal Circuit or a United States District Court. 5 U.S.C. § 7703(b); *Pueschel v. Peters*, 577 F.3d 558, 563 (4th Cir. 2009). If an

employee pursues a mixed case appeal with the Federal Circuit, however, the employee abandons the discrimination claim "because the Federal Circuit lacks jurisdiction to entertain discrimination claims." *Pueschel*, 577 F.3d at 563. Before appealing a dismissal on the merits to the Federal Circuit, an employee must complete a certification form acknowledging abandonment of any discrimination claims pursued before the MSPB. *See id.* at 564; *Chappell v. Chao*, 388 F.3d 1373, 1379 (11th Cir. 2004).

Although an MSPB dismissal on the merits may be appealed either to the Federal Circuit or a federal district court, the Federal Circuit has concluded that MSPB dismissals for lack of jurisdiction are appealable only to the Federal Circuit. *Conforto*, 713 F.3d at 1118. If the Federal Circuit reverses the MSPB, then the case is remanded to the MSPB. *Id.* at 1120. If the MSPB then rules against the employee on the merits, the employee could then appeal to district court and preserve her discrimination claims or to the Federal Circuit and abandon them. *Id.* But if the Federal Circuit affirms the MSPB's dismissal for lack of jurisdiction, the employee may still pursue discrimination claims through the employing agency, the EEOC, and a district court. *Id.*; *see also* 29 C.F.R. § 1614.302 ("If a person files a mixed case appeal with the MSPB instead of a mixed case complaint [with the employing agency] and the MSPB dismisses the appeal for jurisdictional reasons, the agency shall promptly notify the individual in writing of the right to contact an EEO counselor within 45 days of receipt of this notice and to file an EEO complaint, subject to § 1614.107."). Consequently, Laguerra did not waive any discrimination or retaliation claims when she appealed the MSPB order to the Federal Circuit.

This outcome is consistent with the information that the MSPB provided to Laguerra. The MSPB order dismissing Laguerra's case stated that she could appeal to the Federal Circuit. It made no mention of a right to proceed to district court. Nor have Defendants presented

evidence that Laguerra expressly abandoned any discrimination claims as a condition of appealing to the Federal Circuit. *Cf. Pueschel*, 577 F.3d at 564 (finding that a federal employee expressly waived discrimination claims when she signed a Federal Circuit form certifying that she was abandoning any discrimination claims raised before the MSPB).

Defendants also imply that the Federal Circuit's jurisdictional determination has collateral estoppel effect in this proceeding. However, "[c]ourts have uniformly stated that the decision of the [MSPB], or of [the Federal Circuit], holding that the [MSPB] lacks jurisdiction over the employee's appeal, would not be given collateral estoppel effect in a discrimination action brought in district court." *Conforto*, 713 F.3d at 1120 n.4 (citing *Powell v. Dep't of Defense*, 158 F.3d 597, 599 n.2 (D.C. Cir. 1998), and *Sloan v. West*, 140 F.3d 1255, 1262 n.20 (9th Cir. 1998)) Defendants offer no authority or argument to the contrary. Thus, the Federal Circuit's decision that the MSPB lacked jurisdiction over Laguerra's case does not preclude this Court's assessment of the merits of her discrimination and retaliation claims.

## III. Failure to Assert Compensable Damages

Defendants next argue that Laguerra's ADEA claims should be dismissed because federal employees may only recover economic damages for ADEA violations, and, absent the damages Laguerra sustained as a result of her involuntary retirement, she does not allege any economic damages. This argument hinges on the flawed premise that Laguerra waived the discrimination claims connected to her retirement. Since she has not waived those claims, Defendants have no basis to argue that she has not alleged damages recoverable under the ADEA. Therefore, her ADEA claims will not be dismissed on these grounds.

IV.    **Hostile Work Environment**

Laguerra's Amended Complaint makes no mention of a hostile work environment.  The Amended Complaint does, however, refer to Laguerra's 2008, 2010, and 2011 EEO complaints, filed with Treasury, which included allegations that she had been subjected to a hostile work environment based on age, race, and protected activity.  Those complaints pointed to Laguerra's "unacceptable" rating in her annual performance evaluations, her lack of training opportunities, her heavy workload compared to other Human Resources Assistants, the failure to provide her with back-up office coverage, her removal from the Alternative Work Schedule, and the telephone call with unannounced participants as the conduct creating a hostile work environment at the D.C. POD.  Out of an abundance of caution, the Court construes the Amended Complaint as alleging hostile work environment claims under the ADEA and Title VII.

To state a hostile work environment claim, a plaintiff must allege offending behavior that was (1) unwelcome, (2) based on a protected category such as race, age, or having engaged in a protected activity, such as filing an EEO complaint, (3) "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere," and (4) imputable to the employer. *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 207-08 (4th Cir. 2014) (quoting *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)); *Baqir v. Principi*, 434 F.3d 733, 745-46 & n.14 (4th Cir. 2006) (recognizing a hostile work environment claim under the ADEA); *Von Gunten v. Maryland*, 243 F.3d 858, 869-70 (4th Cir. 2001) (recognizing a hostile work environment claim under Title VII for retaliatory harassment), *abrogated on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Laguerra's claim quickly falters on the third prong.  A hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe

or pervasive to alter the conditions of employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleu Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). Among the relevant considerations are whether there was any "physically threatening or humiliating" conduct in the workplace. *Id.* Laguerra alleges that her work environment was unpleasant because she had too much work and not enough support or training to meet her employer's expectations. When she failed to meet those expectations, her employer gave her negative performance ratings and removed her from the Alternative Work Schedule, as required by IRS policy. The privacy violation that Laguerra believes she suffered when co-workers listened in on a call with Nahrgang regarding Laguerra's performance is also insufficient to create an objectively hostile work environment. The co-workers were responsible for reviewing Laguerra's work, and Laguerra does not claim that she discussed any topics other than her performance. She does not allege that supervisors or co-workers threatened or intimidated her or that they ever commented on her race, age, or protected activity. The Amended Complaint therefore does not plausibly allege that Laguerra was a victim of severe or pervasive harassment sufficient to establish a hostile work environment.

## V.    Discriminatory and Retaliatory Termination

Laguerra claims that her forced retirement was the result of both age discrimination and retaliation for her 2008 EEO complaint.[1] She offers no direct evidence to support either theory, so both claims proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir.

---

[1]    To the extent that Laguerra intended to allege that actions leading up to her termination constituted distinct acts of discrimination or retaliation, the Court finds that these claims would fail for the same reason that her claims of discriminatory and retaliatory discharge fail: her inability to present evidence showing that the IRS's legitimate, nondiscriminatory and non-retaliatory explanations for these actions were pretext for discrimination or retaliation.

2015); *Laber*, 438 F.3d at 430. She must first establish a *prima facie* case of age discrimination and retaliation. *Foster*, 787 F.3d at 250; *Laber*, 438 F.3d at 430. In the case of age discrimination, a *prima facie* case consists of a showing that the plaintiff: (1) was over 40 years old; (2) suffered an adverse employment action; (3) was performing at a level that met her employer's legitimate expectations; and (4) the position was filled by a substantially younger individual with comparable qualifications. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006). In the case of retaliation, a *prima facie* case consists of a showing that (1) the plaintiff engaged in protected activity; (2) the employer took an adverse action against the plaintiff; and (3) a causal relationship existed between the protected activity and the adverse employment action. *Foster*, 787 F.3d at 250. Then the burden shifts to Defendants to offer legitimate, nondiscriminatory and non-retaliatory reasons for forcing her to retire. *Id.*; *Laber*, 438 F.3d at 430. If they present such reasons, the burden shifts back to Laguerra who must show that those reasons were not her employer's true reasons but instead pretext for discrimination and retaliation. *Foster*, 787 F.3d at 250; *Laber*, 438 F.3d at 430-31.

Defendants do not directly challenge whether Laguerra has established a *prima facie* case of age discrimination or retaliation, but they offer one specific, nondiscriminatory reason to explain Laguerra's forced retirement: her poor job performance. Defendants have presented extensive evidence in support of this reason. Nahrgang and the Team Leads who reviewed her work found it to be persistently untimely and inaccurate, which necessitated having other BeST staff correct most cases and take over others. For example, Laguerra was assigned 127 cases during the 2009-2010 evaluation period. She completed 92 of those cases, but more than half contained errors, and 90 percent were late. Of the 48 cases Laguerra completed between June 1, 2010 and May 16, 2011, only 20 were error-free. Laguerra closed 60 cases between May 16,

2011 and July 29, 2011, but she made errors in 42 of those cases, and 70 of the 232 cases assigned to her during that period had to be reassigned because Laguerra had missed internal deadlines for their completion by one to three months. Laguerra performed poorly despite the fact that she carried a significantly lighter case load than her colleagues. She was assigned 53 cases between June 1, 2010 and December 10, 2010, while Ushery and Love were assigned approximately 300 cases each. During the first three months of 2011, Laguerra was assigned 38 cases compared to Love's 359. Throughout her tenure at BeST, Laguerra continued to make the same mistakes despite receiving extensive feedback explaining her errors and how to correct them. Each of the four performance appraisals Laguerra received between 2008 and 2011 rated her work as unacceptable. After being placed on a PIP and undergoing additional training, Laguerra's supervisors still concluded that her performance was not minimally adequate. Defendants claim that they are entitled to summary judgment because, even upon consideration of Laguerra's evidence of pretext, no reasonable jury could conclude that the IRS's real reason for terminating Laguerra was age discrimination or retaliation and not her job performance.

### A.    Age Discrimination

Laguerra cannot show that the decision to terminate her if she did not retire was a pretext for age discrimination. First, she offers no direct evidence of any discriminatory motive, such as a statement by her supervisor, Nahrgang, exhibiting any negative animus based on her age. Furthermore, Laguerra does not dispute the information and statistics provided by Defendants regarding her deficient performance, or that her work fell below her employer's stated expectations. Instead, she argues that Nahrgang and others at the IRS concocted those expectations as pretext for age discrimination. *See Warch*, 435 F.3d at 518 (noting that a Title VII plaintiff who did not meet her employer's expectations may still meet that element of a

*prima facie* case by showing that those "expectations were a 'sham designed to hide the employer's discriminatory purpose' or were somehow not 'legitimate'") (quoting *Brummett v. Lee Enters., Inc.*, 284 F.3d 742, 745 (7th Cir. 2002) (internal citation omitted)). By overburdening and undertraining her, the IRS ensured that Laguerra would fail and that it would be able to rid itself of an older worker. This, at least, is Laguerra's theory of pretext.

The problem with this theory is that the evidence, viewed in the light most favorable to Laguerra, at most shows that Nahrgang's expectations were unreasonable, not that they were the product of a discriminatory motivation. Laguerra offers evidence to show that she could not possibly have processed the cases assigned to her in a timely fashion when, unlike her colleagues located in Cincinnati, she had to process mail coming into the D.C. POD each week and she often received case files after the deadline for completing them had already passed. She also posits that, without the proper training, she lacked the knowledge to produce error-free work. Defendants rebut Laguerra's evidence on these points, noting her significantly lower caseload than other Human Resources Assistants and the numerous forms of training she had received, both formal and informal. At best, Laguerra may have established a dispute of fact on whether she could have performed her job in a satisfactory manner had she been relieved of her administrative duties and received additional training.

But even if Nahrgang's expectations were unreasonable given Laguerra's workload and training, there is no evidence that they were not Nahrgang's actual expectations or that they were the product of age-related bias. Tellingly, Laguerra submitted a statement by Lana Gabbard, a younger Human Resources Assistant, who, like Laguerra, handled both case work and administrative duties. Gabbard stated that Nahrgang's "expectations exceed my training and her lack of knowledge of what I actually perform skews her perception." Resp. Ex. 15, Gabbard

Decl. at 1. The fact that a younger worker similarly believed that Nahrgang had unrealistic expectations for her work tends to refute Laguerra's contention that Nahrgang singled her out because of her age.

Laguerra's primary evidence in support of an inference of age discrimination is the alleged disparate treatment of Laguerra as compared to her younger colleagues, Ushery and Love, both of whom were over 40 years old during the relevant time period. The evidence does show that Laguerra worked under different conditions from her fellow Human Resources Assistants, but it does not show that those differences are attributable to age discrimination. First, Laguerra observes that she had to handle both case work and clerical work, while Ushery and Love could focus on their case work. This disparity, however, was a function of location. The D.C. POD had only three BeST employees and no clerical support. Processing the mail fell to Laguerra. The Cincinnati office was larger, and it had an employee, Gabbard, dedicated to administrative tasks. Laguerra was assigned to the D.C. POD in 1997, long before Nahrgang became her supervisor, and she does not contend that this assignment was the product of age discrimination. Moreover, Laguerra consistently was assigned fewer cases that Ushery and Love.

Laguerra also asserts that Ushery and Love received superior training which stemmed from Nahrgang's favoritism towards younger workers. Specifically, Laguerra claims that Ushery and Love benefited from the mentorship of managers and the opportunity to shadow Benefits Specialists. Again, these differences arose because Ushery and Love worked at the Cincinnati office, where they had ready access to managers and colleagues to shadow. Laguerra was based at the D.C. POD, in a different office than her supervisor, Nahrgang, who was located in Cincinnati. Defendants dispute that shadowing is the transformative training experience that

Laguerra makes it out to be, but even if it is a significant benefit that could improve a worker's performance, Laguerra's lack of shadowing opportunities does not support an inference of age discrimination, because the record demonstrates that Laguerra's supervisors, including Nahrgang, committed considerable resources to training Laguerra. She attended formal training sessions in 1999, 2003, 2005, and 2007 and had multiple in-house sessions in Landover and Cincinnati with Nahrgang and other BeST staff. Laguerra frequently sought out the advice of Nahrgang, Team Leads, and Benefits Specialists regarding her assignments. For several years, Team Leads reviewed every assignment Laguerra completed and provided her with written feedback on her mistakes. This extensive and sustained, if ultimately unsuccessful, investment of staff time and resources in Laguerra's professional development contradicts Laguerra's assertion that the IRS avoided training her because of her age.

Finally, Laguerra asserts that because of the advantages afforded to Ushery and Love, Nahrgang's unfavorable comparison of her work to that of Ushery and Love was discriminatory. Although Laguerra's performance reviews did draw attention to the gulf in productivity and accuracy separating Laguerra's work from that of Ushery and Love, there is no evidence to suggest that Laguerra was identified for termination because she could not keep pace with Ushery and Love. Nahrgang assigned to Laguerra considerably fewer cases than Ushery and Love. For instance, from June 1, 2010 to December 10, 2010, Laguerra was assigned 53 cases. Ushery and Love were assigned about 300 cases each. In fact, when Laguerra's case assignment rate doubled in March of 2011, she still carried a substantially lighter caseload than other Human Resources Assistants. Laguerra's supervisors expected her to be able to complete the cases assigned to her. Instead, Laguerra's cases often had to be reassigned because she could not complete them within internal deadlines. Seventy of Laguerra's 232 cases had to be reassigned

24

between May 16, 2011 and July 29, 2011. The cases she did complete were often late and contained errors. During that May to July 2011 period, Laguerra made mistakes in 42 of the 60 cases she completed. The Notice of Proposed Action to terminate Laguerra makes no reference to other Human Resources Assistants. Instead, it finds that Laguerra's work was objectively unacceptable. Given Laguerra's documented inability to complete a lower than typical caseload, on time, and with minimal errors, there is no basis to find that this conclusion was based on age discrimination.

Even if Laguerra's supervisors expected too much of her, unreasonable workplace standards are not necessarily unlawful discriminatory standards. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) ("[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'") (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Laguerra has not shown that discrimination, rather than her record of poor performance, motivated the IRS's decision to terminate her if she did not retire. There is no genuine issue of material fact regarding pretext, so Defendants are entitled to summary judgment.

**B.      Retaliatory Termination**

Although Laguerra filed EEO Complaints in 2008, 2010, and 2011, and the Notice of Action arguably constituted an adverse employment action, the evidence does not support a finding that there was a causal relationship between that protected activity and the decision to terminate Laguerra in 2012. Instead of emphasizing disparities in workload and training as she does for her discrimination claim, Laguerra follows a different chain of events to the conclusion that the stated reason for the decision to terminate, her poor performance, was a pretext for

retaliation. Laguerra identifies a series of adverse incidents that followed her filing of an EEO Complaint on November 14, 2008 as evidence of a retaliatory motive. First, Laguerra claims that for several pay periods in 2008 and 2009, her sick leave was misclassified as absent without leave and leave without pay. She also notes that when she returned from sick leave on February 3, 2009 a color printer had been removed from her cubicle. Laguerra further asserts that in February 2011, her request to attend a training session on FERCCA was denied; on March 8, 2011, her privacy was violated when unannounced co-workers listened in on a call with Nahrgang about her work performance; on March 14, 2011, the rate at which she was assigned cases doubled from one per day to two per day; and on March 28, 2011, Nahrgang informed her that she was being removed from her Alternative Work Schedule. She also notes that all of her performance evaluations after the November 2008 EEO Complaint contained ratings of unacceptable. According to Laguerra, these actions were all retaliatory precursors to her placement on a PIP and the decision to terminate her.

Defendants present a legitimate, non-retaliatory explanation for each of these actions:

1. Nahrgang states that some of Laguerra's sick leave was classified as absent without leave because Laguerra did not respond to Nahrgang's request for required medical documentation. In other pay periods, Laguerra was placed on leave without pay because she had exhausted her accrued and donated leave. Notably, at least some of the pay periods in which Laguerra claims that her leave was misclassified preceded her first EEO complaint against Nahrgang.

2. The printer was removed from Laguerra's cubicle because there were printer problems at the D.C. POD and other co-workers needed to access it.

3. Laguerra was not sent to the FERCCA training session because FERCCA cases are handled by Benefits Specialists, not Human Resources Assistants like Laguerra.

4. Human Resources Specialists Loretta Dean and Clarence Lehigh participated in the phone call between Nahrgang and Laguerra because they were responsible for reviewing Laguerra's work and could help answer Laguerra's questions.

5. Laguerra's caseload increased because the caseload for all of BeST had risen, and two years after returning from sick leave, Laguerra was still carrying a substantially lighter caseload than other Human Resources Assistants.

6. Nahrgang removed Laguerra from an Alternative Work Schedule because IRS policy does not permit employees with unacceptable performance ratings to work such a schedule.

7. Nahrgang issued Laguerra her first unacceptable performance rating on June 30, 2008, before Laguerra had even filed an EEO complaint against Nahrgang.

Laguerra offers no rebuttal to the explanations relating to the alleged leave misclassification, the printer, the increase in workload, the phone call, or the Alternative Work Schedule. As for the FERCCA training, she rejoins that it was relevant to her job duties. Perhaps it was, but that fact would not prove that Nahrgang denied the training to retaliate against Laguerra. Nahrgang sent a Benefits Specialist, not a Human Resources Assistant, to that training, indicating that she genuinely believed that the training was not appropriate or necessary for a Human Resources Assistant. The only link Laguerra makes between the FERCCA training and her 2008 EEO complaint is that the former occurred after the latter—two-and-a-half years after.

Beyond the reasonable and largely uncontested explanations for each of the allegedly retaliatory acts, there is no evidence that Nahrgang or any other supervisor commented negatively on Laguerra's EEO activity or otherwise expressed an intent to retaliate. Accordingly, even when the evidence is viewed in the light most favorable to Laguerra, no reasonable juror could conclude that retaliation was the real reason for the decision to terminate Laguerra.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgement is GRANTED.  A separate Order shall issue.


Date:  June 20, 2016

THEODORE D. CHUANG
United States District Judge